September 18, 1862.

---

## SUPREME COURT—IN EQUITY.

WM. A. ALDRICH EXECUTOR OF THE WILL OF R. W. HOLT, vs. JAMES ROBINSON AND ROBERT LAWRENCE.

REAL ESTATE, purchased with partnership funds, and held and dealt with as partnership property, will, in equity, so far as may be necessary, be treated as personal property.

The share of a deceased partner in the proceeds of the real estate of the partnership, sold for the purpose of a distribution of assets, between the representatives of the deceased partner and the surviving partners, regarded as real estate in the hands of the executors, and to be dealt with as such under the provisions of the deceased partner's will.

Before Justice ROBERTSON, as Vice Chancellor :

*Per Curiam.*—The plaintiff has filed a bill in equity, as executor of the will of the late Robert W. Holt, setting forth, in substance, that the said Robert W. Holt, in his life time, was a copartner with the respondents in the firm of James Robinson & Co., of Honolulu ; that said Holt, Robinson and Lawrence

were the owners, as tenants in common, of a large amount of real estate, purchased with the funds of the partnership, and held and used as partnership property; that the said Holt died on the 6th day of July last, leaving a will, which has been duly admitted to probate, and by which will the plaintiff is appointed sole executor and trustee for the devisees; and that as the real estate held in common by the said copartners cannot be satisfactorily or advantageously divided between the respondents, as surviving partners, and the plaintiff as executor aforesaid, it is desirable and necessary that the real estate should be sold and the proceeds thereof divided. And the plaintiff prays an order of sale accordingly, and that the respondents,.together with himself, may be authorized and required to make such sale, and to execute all necessary conveyances.

The respondents have filed an answer, admitting the copartnership with them of the late Robert W. Holt; that he was seized of one undivided third part of the real estate described in the bill, which was partnership property; that the same can not be partitioned in a manner satisfactory to the parties interested; and joining in the plaintiff's petition for an order of sale, that the proceeds may be divided.

The respondents admit the necessity of the sale, and join in the prayer for the order, but still it seems necessary to consider the question, whether or not the plaintiff, as executor, is the proper party to ask for the sanction of the Court, and to be authorized to join in executing the requisite conveyances.

The question as to how far real estate, purchased with partnership funds and held and used as partnership property, is upon that account to be regarded and treated as personal property, is a novel one in this country, and I have examined the subject with a good deal of care, for it is a question of considerable importance even under our law of inheritance, although not so much so as it is under that of England.

This is one of those subjects upon which a variety of judicial opinion has been enunciated at different times, both in the English and American Courts. So great has been the diversity of opinion that Mr. Justice Story, when he wrote his learned treatise on the Law of Partnership, said the subject must be considered "as open to many distressing doubts." (Story on Partnership, Sec. 93.)

HAWAIIAN REPORTS, 1862.

Mr. Bisset, a respectable English text writer, in stating his view of the doctrine to be deduced from the adjudged cases, gives the first proposition as follows :

" That in the absence of a specific agreement to the contrary, real estate purchased with partnership funds for partnership purposes, is converted out and out into personal estate, and therefore goes to the personal representative, and not to the heir of a deceased partner."

With all due regard for so respectable an authority, I feel constrained to say, that in my opinion, the rule here laid down is not sustained by the weight of authority, either English or American ; and if such has been held to be the law in some Courts, it does not seem to me to be based upon satisfactory reasons.

The difficulty which surrounds this subject is attributable in a great measure, I think, to the efforts of the English Equity Courts to overcome the peculiarities of the English common law affecting real property, so as to subject real estate purchased with partnership funds, for partnership purposes, to partnership liabilities, in like manner with the personal estate of a partnership. In effecting this object, some judges have gone the extreme length of holding that in equity real estate so purchased and held, is not only to be regarded as personal property, for purposes connected with the partnership, but as being converted out and out into personality, and to be so regarded and dealt with for all purposes whatsoever.

Those who, with Mr. Bisset, regard the extreme doctrine as being clearly established, appear to me to attach too much weight to some decisions given by the learned Chancellor, Lord Eldon, and followed by several other judges. In the case of Ripley *vs.* Waterworth, 7 Vesey, jr., 425, his lordship held that real estate conveyed for the purposes of a partnership trade, was converted out and out into personal estate ; but it must be observed that in that case there was a written agreement between the parties, and the decision was based upon the construction of that agreement. In the case of Townsend *vs.* Devaynes, his lordship is reported to have decided that real estate purchased for partnership purposes, took the character of personal estate, so as to belong, at the death of a partner, to his

personal representatives, but I am unable to ascertain whether or not there was any agreement in that case. Mr. Jacobs, in his edition of Roper's Husband and Wife, accounts for the decision on the supposition that there was an agreement; and Sir L. Shadwell, V. C., in Randall *vs.* Randall, said the case of Townsend *vs.* Devaynes, decided only that where partners in a trade purchase land for the purposes of the trade, it shall be considered as personal. In Stuart *vs.* The Marquis of Bute, 11 Vesey, jr., 665, Lord Eldon said, that in cases where persons engaged in partnership have bought freehold houses, the difficulty of distinguishing and arranging property of different natures, partly personal and partly real, has never been held sufficient to exclude the heir, except by the effect of the contract or the will of the deceased partner. In Selkrig *vs.* Davies and Salt, 2 Dow, 242, his lordship did declare his opinion to be, that all property involved in a partnership concern ought to be considered as personal; but when adverting to this same point in the later case of Crawslay *vs.* Maule, he evidently considered it as a question by no means settled, whether freehold estate purchased by a partnership, and in some sense an article of stock in trade, would, on the death of a partner, pass as real estate or as stock; as personal estate in enjoyment, though freehold in nature and quality. On the whole, therefore, I do not consider the opinion of Lord Eldon as having finally settled down in favor of the application of the principle to the extent that is claimed.

In the case of Phillips *vs.* Phillips, Myl. & K. 649, Sir John Leach, M. R., upon the authority of Townsend *vs.* Devaynes, and the opinion expressed at different times by Lord Eldon, and from considerations of general convenience, held that freehold and copyhold public houses, purchased by two brewers with the partnership capital, and conveyed and surrendered to them and their heirs for the purposes of the partnership trade were to be considered as personal estate generally, and not merely for the payment of the partnership debts. His Honor adhered to the same view in the later case of Broom *vs.* Broom, 3 Myl. & K. 443, and upon the authority of these cases, Mr. Baron Alderson held the same doctrine, in the case of Morris *vs.* Kearsley, 2 You. & Coll., 139.

I will now refer to some decisions of a different aspect. In

the case of Thompson *vs.* Dixon, 3 Brown's C. C., 166, Lord Chancellor Thurlow held that, had the agreement been that the mills should be valued and sold, it would have converted them into personalty of the partnership; but that the agreement in this case was not sufficient to vary the nature of the property; therefore, that after the dissolution, the property would result according to its respective nature, the real as real, the personal as personal, estate. It is observable that the decision in this case, like that of Lord Eldon in Ripley *vs.* Waterworth, rests upon the construction of an agreement between the parties.

In the case of Bell *vs.* Phyn, 7 Vesey Ju., 453, in which judgment was given on the same day as in the case of Ripley *vs.* Waterworth, Sir William Grant, M. R., one of the ablest equity judges who ever sat upon the English bench, said, at the close of the argument, that, supposing this was partnership property, he doubted whether the consequence was a conversion, for there was no occasion to call for it for any of the purposes of the partnership. It remained clear. And his Honor suggested the pertinent question, " Why is it to be considered personal property, something different from what it really is, as between the real and personal representative ? " a question to which I have not yet seen a satisfactory answer given by any Court holding a different opinion. He decided in favor of the heir, on the ground that, even if it was partnership property, there was nothing done by the partners to alter the nature of it.

In the case of Balmain *vs.* Shore, 9 Vesey Ju., 499, the same learned judge, citing the decision of Lord Thurlow, in Thompson *vs.* Dixon, held that real estate purchased and held for the use of the partnership, was not converted into personal property.

In the case of Randall *vs.* Randall, the Vice Chancellor, Sir L. Shadwell, held that the property which was the subject of the suit, was not, under all the circumstances of the case, to be considered as converted into personalty, because " it did not appear that the parties purchased the land for the purposes of their partnership in trade," and it was understood from the tenor of his judgment that he was disposed to hold, that, in the absence of any express agreement to the contrary, the real property of a partnership is not to be deemed converted into per-

sonalty, except so far as may be necessary for partnership purposes.    (Collyer on Part., Sec. 149 ; Bisset on Part, p. 31.)

In the subsequent case of Cookson *vs.* Cookson, 8 Sim., 529, Mr. Collyer says Sir L. Shadwell had an opportunity of deciding the express point ; but Mr. Bisset thinks the decision in that case does not conflict with the more modern decisions which preceded it, on the ground that the real estate was not actually purchased with partnership assets. In that case the real estate was originally the property of Isaac Cookson, the elder, who, when he took his son into partnership with him, gave him six thirty second parts of the real estate, and then it was agreed between them that the real estate should continue to be used as a manufactory for carrying on their trade, and should be had, taken, and enjoyed as a part of the joint stock in the partnership business. The Vice Chancellor, in giving judgment, did make a point of the fact that the real estate was not actually bought with partnership money, apparently for the purpose of freeing the case from the application of what he evidently considered the unreasonable doctrine of former decisions. But in answering the question whether or not the real property, in any case, is converted out and out into personalty, I see no difference in principle between the case of the parties putting into the stock real estate which they already hold in common, and that of purchasing real estate and then putting it into the stock. In respect to a clause at the end of the articles, which it was argued must be taken as showing that for all intents and purposes, and for all time, the father's shares had become personal property, his Honor said, " I understand the covenant as having a very distinct meaning, namely, that during the partnership, and, if necessary for partnership purposes, after the expiration of the partnership, the shares which the father and the son had respectively, should be considered as personal estate ; but it would be quite absurd to say that the covenant shall be so extended as that, though the partnership expired, and though the land was not required to be sold for partnership purposes, it should have the effect of making that which was unquestionably land in its own nature, absolutely personal estate, not for any beneficial purpose either to the father or to the son, but for the purpose of making a sort of unnatural and unnecessary conver-

sion of real assets into personal, as between the real and personal representatives of the two partners respectively." (Bisset on Part., p. 31.) It seems to me that the legal, or rather equitable, implication by which it has been held in some cases, that real estate devoted to the use of a partnership, became converted out and out, and to every intent, into personalty, can never be deemed of greater force than the express covenant here referred to in Cookson *vs.* Cookson, and yet the learned Vice Chancellor gave to that covenant what I consider the only sound construction, limiting the operation of the equitable principle to its legitimate bounds.

In the case of Hoxie *vs.* Carr *et al.*, Sumner's R., p. 173, Mr. Justice Story, in the course of his decision, remarked, " A question often arises, whether real estate, purchased for a partnership, is to be deemed for all purposes personal estate, like other effects. That it is so, as to the payment of the partnership debts, and adjustment of partnership rights, and winding up the partnership concerns, is clear, at least in the view of a Court of Equity. But whether it becomes personal estate as between the executor or administrator of a deceased partner and his heir or devisee, is quite a different question, upon which learned judges have entertained opposite opinions." In that case the question was only whether the real estate was to be treated, in equity, as personal property, as between the partners themselves and the creditors of the partnership. The learned judge regarded it as the established doctrine of Courts of Equity that it should be so treated to that extent, and decided accordingly.

In the case of Burnside *et als. vs.* Merrick *et als.*, in the Supreme Court of Massachusetts, it was held that real estate, purchased by partners, for the partnership business and with the partnership funds, though conveyed to them by such a deed as, in case of other parties, would make them tenants in common, is considered in equity as part of the partnership stock, and is to be applied, if necessary, towards payment of the partnership debts. And that, though such estate is considered, at law, as the several property of the partners, yet it is held subject to a trust arising by implication of law, by which it is liable to be sold and the proceeds brought into the partnership funds, so far as is necessary to pay the debts of the firm. (4 Metcalf, 537.)

W. A. Aldrich *vs.* J. Robinson and R. Lawrence.

In the case of Dyer *vs.* Clark, in the same Court, (5 Metcalf, 562,) where the subject was elaborately discussed by Chief Justice Shaw, the same doctrine was again laid down as in the case last cited. The reasoning of the learned Judge is extremely clear, and points out how the object of Courts of Equity may be accomplished, so as to secure the rights of all parties, by considering the real estate as held in trust for the purposes of the partnership, without resorting to the extreme doctrine of holding real estate to be converted out and out into personalty, by implication of law. His Honor remarked : " But treating it as a trust, the rights of all parties will be preserved ; the legal estate will go to those entitled to it, subject only to a trust and equitable lien to the surviving partner, by which so much of it shall stand charged as may be necessary to accomplish the purposes for which they purchased it. To this extent, and no further, will it be bound; and subject to this, all those will take who are entitled to the property, namely, the creditors, widow, heirs, and all others standing on the rights of the deceased partner." (See also, to the same effect, Howard *et als. vs.* Priest *et als.*, 5 Metcalf, p. 582.) I am aware that some American authorities favor the adoption of the extreme doctrine, but I think the weight of judicial opinion of that country is against it.

I have intimated before that I think the English Equity Courts have been largely controlled by the necessity of overcoming certain peculiarities of the common law, touching real property. Those peculiarities have no existence in this Kingdom, where real property is always a fund for the payment of debts, equally with personalty, although in some cases the latter must first be exhausted. Nor does the same distinction exist in this country as in England, in regard to inheritance, for with us the heir takes the personalty as well as the realty, saving the widow's share ; hence the question as to the conversion of real estate into personalty, and the consequences of such a conversion, do not possess the same prominence here as in England. But a contest is liable to arise in this country at any time, between the widow and the heir or devisees.

I may also observe here, that in most of the English cases upon this subject, the real estate in question had been purchased and used purely for purposes immediately connected with

the business of the partnership, as, for instance, lands and buildings necessary for trading or manufacturing establishments. There is a clear shade of difference between real property held purely for that purpose, and land purchased with partnership money, conveyed to and held by partners as tenants in common, even where the rents and profits are mixed with the partnership funds and improvements made at the expense of the partnership, but the property is not used as an accessory to the partnership business. In the present case, the principal business of the partnership was that of ship-carpenters, wharfingers, and warehousemen, although the firm was interested in other kinds of business. Much of the real estate, although purchased with partnership funds, was not used for the purposes of the principal partnership business. In the language of the bill, that real estate was held by the partners as tenants in common, subject to a trust in favor of the partnership, that is, as I understand it, so far as the purposes of the partnership might render necessary, and no further. There was no agreement between the partners changing the nature of the property.

The object of the application of the equitable principle in these cases, is the enforcement of equitable claims, and when that object has been accomplished, I am unable to see the propriety in any case, in the absence of an express agreement, of carrying the principle further, to the extent of working an arbitrary and unnecessary change in the nature of property, for no equitable purpose whatever, thus affecting the legal rights of parties in no way connected with the partnership. Certainly no consideration of mere convenience should be suffered to have this effect, as seems to be suggested in some of the English decisions.

As we have seen, Courts may differ widely in opinion as to whether or not real estate, under the circumstances now discussed, should be held as converted into personalty to all intents and purposes, so as even to make it distributable as personalty, among the representatives of a deceased partner, but to a certain extent, the application of the equitable doctrine is well established. For the purposes of the partnership, such as the payment of partnership debts, enforcing the lien of a surviving partner as against the assets of his deceased partner, and the

W. A. Aldrich *vs.* J. Robinson and R. Lawrence.

adjustment of partnership accounts upon a dissolution, real estate purchased with partnership funds, and held and dealt with as partnership property, will, in equity, so far as may be necessary, be treated as personal property.

At first I was inclined to think that, as in this case there is no occasion to call for the real estate to pay partnership debts, or to meet the lien of the surviving partners for contribution, there was no necessity to treat the real estate as personalty. But, upon reflection, I think it is proper to treat the real estate as personalty, for the purposes of this proceeding, the object of which is a distribution of assets, between the representatives of the deceased partner and the survivors, necessary to the final adjustment of the partnership business.     And, in this country, where executors and administrators are clothed with extensive powers in relation to property both real and personal, there seems great propriety in regarding the plaintiff as the proper party, in his character of executor and trustee for devisees, to invoke the order of the Court, and to join with the respondents in the sale and conveyance of the real estate.     The share of the deceased partner in the proceeds of the real estate, will be regarded as real estate in the hands of the executor, and dealt with accordingly, under the provisions of the will, and his action in the premises will bind all parties interested.

The order of sale and division is granted, as prayed for.

Mr. Bates, for the plaintiff.

Mr. Austin, for the respondents.